UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR ESCOBEDO,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KIERA BURGIN GONZALES;<br>CLINICIAN HANSEN; SEGREGATION<br>OFFICER JOHN DOE; CORPORAL<br>SMITH; SERGEANT BARROWS;<br>CORPORAL NOBLE; CORPORAL<br>BELL; and SERGEANT RODGERS,<br><br>　　　　　　　Defendants. | Case No. 1:23-cv-00406-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Omar Escobedo is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). In the operative Third Amended Complaint ("TAC"), Dkt. 35, Plaintiff claims that, from October 2019 to December 2022, former correctional officer Defendant Kiera Gonzalez sexually abused Plaintiff. Plaintiff also alleges that other prison employees—specifically, Defendants Clinician Hansen, unidentified segregation officer "John Doe," Corporal Smith, Sergeant Barrows, Corporal Noble, Corporal Bell, and Sergeant Rodgers—engaged in a retaliation campaign against Plaintiff after Plaintiff reported Gonzalez's sexual abuse. These Defendants allegedly placed Plaintiff in handcuffs that were too tight, denied Plaintiff a mattress, transferred Plaintiff to a different prison, and confiscated certain items of Plaintiff's property. *See generally id.* Finally, Plaintiff states that he was denied parole as a result of "reprimands and other bad information" placed into his file by unidentified Defendants in retaliation for Plaintiff's reporting Defendant Gonzalez's abuse. *Id.* at 13.

Plaintiff brings his claims under 42 U.S.C. § 1983, the federal civil rights statute. Plaintiff asserts Eighth Amendment sexual abuse claims against Defendant Gonzalez and First Amendment retaliation claims against the other Defendants.

Defendants Hansen, Doe, Smith, Barrows, Noble, Bell, and Rodgers have filed a Motion for Summary Judgment, as well as a Motion for Judgment on the Pleadings; Defendant Gonzalez has joined both motions. Dkts. 46, 47, 49, 51. In the Motion for Judgment on the Pleadings, Defendants argue that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See generally Memo. in Supp. of Mot. for J. on Pl.*, Dkt. 46-1. In the Motion for Summary Judgment, Defendants argue that Plaintiff failed to exhaust available administrative remedies as to all his claims. *See generally Memo. in Supp. of Mot. for Summ. J.*, Dkt. 47-1. The parties, through counsel, have filed their briefing, and the motions are ripe for adjudication.

Additionally, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), this Court may dismiss a complaint or any portion thereof at any time, on its own motion or otherwise, if a claim is frivolous or malicious, seeks monetary relief from a defendant who is immune from such relief, or fails to state a claim upon which relief may be granted.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1(d).

For the reasons that follow, the Court concludes that Plaintiff's parole-denial claim is barred by *Heck*, and that Plaintiff failed to exhaust administrative remedies as to all of his claims, with the possible exception of his claims against Defendant Gonzalez that arose between October 2019 and July 2020. However, the sexual abuse claims arising between October 2019 and July 2020—even if exhausted—appear untimely. Because Defendants did not move for summary

MEMORANDUM DECISION AND ORDER - 2

judgment on timeliness grounds, the parties will have an opportunity to file supplemental briefing on this issue.

Finally, the Court concludes that the Third Amended Complaint fails to state a plausible retaliation claim against Defendant Smith or Defendant Noble for failure to provide an adequate mattress or for deprivation of property.

Accordingly, the Court will grant in part Defendants' Motion for Judgment on the Pleadings and will conditionally grant Defendants' Motion for Summary Judgment. Within 21 days after entry of this Order, Plaintiff may respond to the Court's analysis that Plaintiff's claims against Gonzalez that arose between October 2019 and July 2020 are untimely. Defendants may file a reply to Plaintiff's response within 14 days after service of that response.

## STANDARDS OF LAW GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*,

550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id.*

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show that the non-moving party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325.

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

MEMORANDUM DECISION AND ORDER - 4

The Court must consider "the cited materials" in considering a motion for summary judgment, but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). In opposing a motion for summary judgment, the non-moving party must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Soto v. Sweetman*, 882 F.3d 865, 872-73 (9th Cir. 2018). If the non-moving party fails to produce such evidence, or if the evidence produced is insufficient, the Court "is not required (or even allowed) to assume the truth of the challenged allegations in the complaint." *Butler*, 370 F.3d at 963. Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact" to survive summary judgment. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ.

56(e)(2). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). A district court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte—provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit or declaration. *Beyenne*, 854 F.2d at 1182. The affidavit must contain the sworn "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id*.

### OBJECTION TO PLAINTIFF'S DECLARATION

As an initial matter, the Court must address Defendants' Objection to Plaintiff's Declaration in opposition to the motion for summary judgment. In that Objection, Defendants first

argue that the Court cannot consider Plaintiff's Declaration because it does not comply with 28 U.S.C. § 1746. *See* Dkt. 65.

Section 1746 permits parties to support their claims or defenses with unsworn declarations that may be treated as a sworn affidavit. To take advantage of § 1746(1), the declaring party must declare, under penalty of perjury "under *the laws of the United States of America*," that the statements in the declaration are true and correct. 28 U.S.C. § 1746(1) (emphasis added). Defendants correctly point out that Plaintiff declares "under penalty of perjury pursuant to *the laws of the state of Idaho*" that the statements in his declaration are true and correct. Dkt. 60 at 11 (emphasis added). Plaintiff's Declaration was not made under penalty of perjury of the laws of the United States.

However, § 1746(1) applies only if the declaration is executed *outside* of the United States. Section 1746(2) permits a party executing a declaration "within the United States" to make a general declaration "under penalty of perjury that the foregoing is true and correct." Subsection (2) does not require that the declaration be made under penalty of perjury under the laws of the United States, or the laws of any state, if the document is executed in the United States.

Defendants have submitted no evidence that Plaintiff's Declaration was executed outside the United States. Therefore, Plaintiff's Declaration, which was made under penalty of perjury of the laws of the State of Idaho, can be considered in resolving Defendants' Motion for Summary Judgment. *See Rosales v. City of Chico*, No. CV21402152WBSCMK, 2015 WL 6167740, at *10 (E.D. Cal. Oct. 20, 2015) (unpublished) ("[D]efendants also object to the declarations plaintiff submitted because they were signed under penalty of perjury 'under the laws of the State of California.' Because 28 U.S.C. § 1746 permits a general oath under penalty of perjury without reference to any state or federal law, *see* 28 U.S.C. § 1746(2), plaintiff's reference to state law is

not fatal . . . ."); *but see I.S. v. Charter Oak Unified Sch. Dist.*, No. CV 05-1427 DSF (RCX), 2007 WL 9620161, at *4 (C.D. Cal. Sept. 4, 2007) ("[The party's] declaration is signed under penalty of perjury under the laws of the State of California and does not meet the requirements of [28] U.S.C. § 1746.").

Defendants next object to Plaintiff's Declaration on the grounds that some of the assertions therein are merely conclusory and self-serving, unsupported by any evidence or detailed facts. Dkt. 65 at 3–5 (citing *F.T.C.*, 104 F.3d at 1171). The Court will discuss the substance of these assertions when it discusses the merits of the motions below.

Accordingly, Defendants' Objection to Plaintiff's Declaration is overruled.

## FACTUAL BACKGROUND

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not blatantly contradicted by clear documentary evidence in the record. *See Scott*, 550 U.S. at 380.

In October 2019, when Plaintiff was incarcerated at the Idaho State Correctional Institution ("ISCI"), Defendant Correctional Officer Kiera Gonzalez "began to physically assault Plaintiff by entering his cell and touching Plaintiff in a sexual way." TAC ¶ VI. In December 2019, Gonzalez became "bolder and more brazen." *Id*. ¶ VII. Though the Third Amended Complaint initially stated that Gonzalez continued her assaults of Plaintiff until December 2022, *id*. ¶ IX, Plaintiff clarifies in his Declaration that Gonzalez took maternity leave in late 2021 and was gone from the prison "through most of 2022." *Decl. of Omar Escobedo* ("*Escobedo Decl.*"), Dkt. 60, ¶ 14. Plaintiff does not allege that Gonzalez committed any additional sexual assaults against him after she was "back at work at IDOC" after her maternity leave. *Escobedo Decl*. ¶ 15.

MEMORANDUM DECISION AND ORDER - 8

Plaintiff also brings retaliation claims under the First Amendment. Plaintiff states that he initially feared reprisals from IDOC staff if he reported Gonzalez's abuse. TAC ¶ VIII. Nonetheless, at some point Plaintiff informed Defendant Clinician Hansen of the abuse. Plaintiff also states that he informed other, non-defendant clinicians about the abuse, but they did not believe Plaintiff and—like Watson—told Plaintiff he likely "was suffering from memories of [his] various childhood traumas." *Escobedo Decl*. ¶ 12.

Dissatisfied with the clinicians' failure to help, Plaintiff used the IDOC Prison Rape Elimination Act ("PREA") hotline, on January 3, 2023, to report Gonzalez's sexual assaults. TAC ¶¶ XXXI–XXXII. Defendant Ramirez investigated Plaintiff's PREA report about Gonzalez's sexual assaults. Plaintiff presented Ramirez with proof of the assaults—a pair of underwear belonging to Gonzalez. *Id*. ¶ XXXIII–XXXIV.

Clinician Hansen evaluated Plaintiff regarding his mental health as a result of the assaults. Hansen apologized for not initially believing Plaintiff. Hansen said Plaintiff should get an attorney because "things" could "get worse" for Plaintiff as he would be leaving ISCI and the treatment he was receiving there. *Id.* ¶ XXXV.

Plaintiff was assaulted by another inmate on January 5, 2023, and unidentified Defendant "John Doe" placed Plaintiff in handcuffs, presumably during the time the incident between the inmates was being investigated. Plaintiff claims that the handcuffs were too tight. Doe left Plaintiff cuffed to chair and desk for over 1.5 hours, during which "Plaintiff was in pain and bleeding." *Id*. ¶ XXXVI.

Plaintiff told Defendant Corporal Smith about his injuries from the tight handcuffs. Smith noted Plaintiff's bleeding and broken skin but did not call for medical treatment. *Id*. ¶ XXXVII.

On an unidentified date, an unidentified correctional officer[1] placed Plaintiff "in a cell with no mattress to sleep on." *Id*. ¶ XXXVIII. Plaintiff was reprimanded by an unidentified individual when he complained.

On February 14, 2023, Plaintiff was transferred from ISCI to the Idaho State Correctional Center ("ISCC"), where Gonzalez was then working. Defendants Bell, Hansen, or Ramirez allegedly told Plaintiff that he was being transferred "because he reported" Gonzalez's sexual abuse. *Id*. ¶ XXXIX.

Once he was transferred to ISCC, Plaintiff was placed in a "close custody" unit but was later transferred to a "general custody" unit. Plaintiff claims that he did not have access to the same "mental health treatment and other programming that was available to him at ISCI." *Id*. ¶ XL.

Plaintiff also alleges that, upon transfer to ISCC, Defendants Bell, Powell, and Rodgers took some of Plaintiff's property, including evidence of Gonzalez's assaults and "legal documents and other items substantiating previous retaliation against Plaintiff." *Id*. ¶ XLV. When Plaintiff complained, Defendant Noble told Plaintiff he has "exceeded his allowable property limits." Non-defendant Jay Lau ordered that the property be returned, but Defendants Barrows and Noble refused to do so. Noble later destroyed the items without notice to Plaintiff. *Id*. ¶ XLVI–XLVIII.

Plaintiff also contends that "reprimands and other and information" were placed in Plaintiff's record and that, as a result, he was denied parole. Plaintiff contends these items were placed in his file by unidentified defendants "in retaliation for his reporting the sexual abuse" by Gonzalez. *Id*. ¶ XLI.

---

[1]    Although neither the Third Amended Complaint nor Plaintiff's Declaration identifies the person who did not ensure Plaintiff had a mattress, Plaintiff's grievance on this issue suggests that it might have been non-defendant Jacob Rogers.

Gonzalez was terminated from her IDOC employment on April 12, 2023. In May 2023, Plaintiff was informed by Deputy Warden McKay that, because Gonzalez had assaulted him, he should never have been transferred to ISCC, where Gonzalez had then been working. McKay also told Plaintiff that his report of Gonzalez's abuse had been substantiated. *Id*. ¶¶ XLIII–XLIV.

Plaintiff asserts an Eighth Amendment claim of sexual abuse against Gonzalez. *Id*. ¶¶ IV–XXI. He also asserts First Amendment retaliation claims against Defendants Hansen, Doe, Smith, Barrows, Noble, Bell, and Rodgers. *Id*. ¶¶ XXII–LI. Plaintiff seeks monetary damages. *Id*. ¶¶ XXI, LII.

## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff claims that he was denied parole as a result of information placed in his record in retaliation for his reporting the sexual assaults committed by Gonzalez. Defendants move for judgment on the pleadings, contending that Plaintiff's parole-denial claim is subject to dismissal under the doctrine announced in *Heck*, 512 U.S. 477.

In *Heck*, the United States Supreme Court held that, if success on a civil rights claim "would necessarily imply the invalidity" of a plaintiff's criminal conviction, the plaintiff must first show that the conviction has already been overturned, invalidated, or otherwise called into question. *Id*. at 486–87. As the Supreme Court has clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). To overcome the *Heck* bar, a plaintiff must show either that (1) the action, if successful, would *not* necessarily "demonstrate the invalidity of any outstanding criminal judgment" or (2) "the conviction or

MEMORANDUM DECISION AND ORDER - 11

sentence has already been invalidated." *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1005 (9th Cir. 2022) (en banc) (internal quotations and citation omitted) (quoting *Heck*, 512 U.S. at 487).

*Heck* has been extended to claims of improper parole denials and revocations. *Wilkinson*, 544 U.S. at 82 (holding that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility . . . and parole suitability," but he may not seek "an injunction ordering his immediate or speedier release into the community."); *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (holding that a § 1983 claim was noncognizable because a "judgment in favor of [plaintiff] on his illegal seizure claim would necessarily imply the invalidity of the revocation of his probation and parole"). That is, if success on a civil rights claim would call into question the validity of a plaintiff's parole denial or revocation incarceration, the plaintiff cannot maintain the claim without showing that the parole denial or revocation has been invalidated.

If Plaintiff were to succeed on his claim that he was unconstitutionally denied parole in retaliation for reporting Gonzalez's misconduct, it would necessarily imply the invalidity of that parole denial. Because Plaintiff has not established that the denial of parole has been overturned or otherwise invalidated, this claim must be dismissed without prejudice under *Heck*. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (per curiam) (stating that *Heck*-barred claims must be dismissed without prejudice). Accordingly, Defendants' Motion for Judgment on the Pleadings will be granted as to Plaintiff's parole-denial claim.

## MOTION FOR SUMMARY JUDGMENT

Defendants contend that Plaintiff's claims must be dismissed because Plaintiff did not properly exhaust available administrative remedies within the prison grievance system. Plaintiff contends that he did exhaust available remedies. For the reasons that follow, the Court agrees with

Defendants. Moreover, even if some of Plaintiff's claims had been properly exhausted, they appear untimely, and the Court will permit the parties to address this issue in supplemental briefing.

## 1. The Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[2] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Courts are not permitted to "read futility or other exceptions into [the PLRA's] statutory exhaustion requirements." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc).

---

[2]       Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

An inmate is required to exhaust those remedies that are "available." That is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth*, 532 U.S. at 738).

Lack of exhaustion is an affirmative defense. If the defendant shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. However, the ultimate burden of proving failure to exhaust remains with the defendant. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44 "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* at 644 (internal quotation marks and alteration omitted).

Third, administrative remedies will be deemed unavailable if prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. For

MEMORANDUM DECISION AND ORDER - 14

example, if prison officials prohibited an inmate from accessing "the necessary grievance forms within the prison's time limits for filing the grievance," the plaintiff's failure to exhaust will be excused. *Albino*, 747 F.3d at 1172–73.

## 2.    The IDOC's Grievance Process

The grievance policy of the IDOC is set forth in IDOC Policy 316 and the Division of Prisons Standard Operating Procedure 316.02.01.001, which are properly attached as Exhibits A and B to the Declaration of Kristina Waldram ("Waldram Decl."), Dkt. 47-3. IDOC's grievance process consists of three steps.

First, an inmate with a problem must seek an informal resolution of the matter by submitting an inmate concern form. The concern form must be sent to the person most capable of addressing and resolving the issue: "For example, if an inmate has a problem with a particular correctional officer, the Inmate Concern Form should be addressed to that officer." The officer to whom the concern form is addressed is supposed to respond within seven days. *Waldram Decl.* ¶ 6.

Second, if the matter cannot be informally resolved through a concern form—either because the officer does not respond to the concern form within seven days or because the inmate is unsatisfied with the response—the inmate must submit a grievance form. The grievance form must contain specific details, such as the precise nature of the inmate's complaint, the date and places involved in the matter, and the identities of the particular individuals against whom the inmate is asserting the grievance. A grievance form must be submitted within 30 days of the incident of which the grievance complains. Only one issue may be raised per grievance, and each grievance form must include the inmate's suggested solution to the problem. *Id*. ¶ 7.

If a grievance form is not completed correctly, it is returned to the inmate without action and with instructions on how to correct the deficiencies. *Id*. If the inmate stops there and does not

correct the deficiencies, the grievance process has not been exhausted. *Id.* ¶¶ 11–12. If the grievance form is completed correctly—either originally or after an inmate corrects any initial deficiencies—the IDOC Grievance Coordinator sends the grievance to a "reviewing authority," generally a deputy warden. This authority reviews the grievance, the inmate's concerns, and the staff member's initial response, as well as any applicable policies, SOPs, or other rules. The reviewing authority may grant, deny, or modify the inmate's suggested solution. An electronic copy of the final grievance, including the reviewing authority's response, is retained in a database, and the inmate receives the original documents as well as an electronic copy. *Id.* ¶¶ 7–8.

Third and finally, if an inmate is not satisfied with the response to the grievance form, the inmate may file an appeal of the response to the grievance form. A grievance appeal must be filed within 14 days of receiving the reviewing authority's response. The Grievance Coordinator provides the appeal to an "appellate authority," usually the head of the facility. The appellate authority must respond to the appeal within 14 days. This response is retained in the electronic database, and the inmate receives both an electronic copy and the original appeal documents. *Id.* ¶ 9.

The grievance process is not properly exhausted unless all three of these steps are properly completed within the required deadlines. "An inmate who does not file a Grievance Form, files a grievance outside the time limit, or does not appeal the response to grievance, does not complete the IDOC grievance process, and thus, has not exhausted his administrative remedies." *Id.* ¶ 10.

### 3.    Because Plaintiff Failed to Exhaust Available Administrative Remedies, Defendants Are Entitled to Summary Judgment

In support of their Motion for Summary Judgment, Defendants have produced evidence from the IDOC grievance system records that, from the date of the first alleged incident of

Gonzalez's misconduct until the date Plaintiff filed this action, Plaintiff filed 35 grievances but exhausted only five of them. The exhausted grievances are the following:

1) Grievance No. ISCC-REG-00853 ("Grievance 853"). Grievance 853 complained of actions taken by non-defendant Deputy Warden McKay and does not include any allegations against any Defendant in this case.

2) Grievance No. ISCC-23-REG-00556 ("Grievance 556"). Grievance 556 complained of Defendant Corporal Noble's confiscation and destruction of Plaintiff's property. It did not include any allegations against any other Defendant.

3) Grievance No. ISCI-23-REG-00126 ("Grievance 126"). Grievance 126 complained that Plaintiff was placed in handcuffs that were too tight, but it did not identify the "John Doe" defendant who placed Plaintiff in the handcuffs, nor did it complain of any actions by any named Defendant.

4) Grievance No. ISCI-23-REG-00151 ("Grievance 151"). Grievance 151 complained of actions taken by non-defendant Sergeant Gresick and included no allegations against any Defendant.

5) Grievance No. II 210001118 ("Grievance 1118"). Grievance 1118 complained that Plaintiff had been deprived of a mattress by non-defendant Jacob Rogers. The grievance stated that Plaintiff had attempted to solve the problem by speaking with Defendant Corporal Smith and several non-defendants, but the grievance does not allege that Smith was the person who denied Plaintiff a mattress.

*Waldram Decl*. ¶¶ 14–18 and Ex. C–E; *Martinez Quiroz Decl*., ¶¶ 14–25 and Ex. G, K, L. None of these exhausted grievances complained of sexual assault by Defendant Gonzalez.

A.    *Plaintiff Did Not Properly Exhaust His Eighth Amendment Claim against Defendant Gonzales*

As explained above, Defendants have produced evidence that, of the five grievances Plaintiff exhausted, none of them complained of sexual assault by Defendant Gonzalez. Thus, the burden of production shifts to Plaintiff to come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Plaintiff contends that he did everything he could to exhaust his sexual assault claims but that he was "told ultimately that the institution could provide him with no relief." Dkt. 58 at 2. Plaintiff relies on the following allegations in support of this contention: (1) in July 2020, Plaintiff had "filed grievances regarding . . . Gonzalez's abuse of him and had received no responses"; (2) Plaintiff informed multiple clinicians about the assaults, which did not result in any help for him; (3) Plaintiff feared retaliation if he reported Gonzalez's abuse; and (4) Plaintiff submitted a PREA report in January 2023. *Id*. at 3. Petitioner's arguments are addressed below.

i.    Plaintiff's July 2020 Grievance Forms Did Not Exhaust Any Sexual Abuse Claims with the Possible Exception of Claims Arising in or Before July 2020, but Those Claims Appear Untimely

Plaintiff claims in his Declaration that, in July 2020, he submitted a concern form in which he "complained about mistreatment by prison staff in the form of inappropriate touching." *Escobedo Decl.* ¶¶ 10–11. Staff did not respond to the concern form. Instead, non-defendant Lieutenant Governor and "other" unidentified staff members visited Plaintiff. One of these staff members told Plaintiff he was filing too many grievances and that, if he continued to do so, he "would be moved to 'max.'" *Id*. ¶ 11.

Because Plaintiff had not received a response to his July 2020 concern form, he submitted a grievance on the issue of "inappropriate touching" by placing it in the grievance box. Plaintiff

did not receive a response. Plaintiff states that he then placed a grievance appeal in the grievance box. Plaintiff did not receive a response to the appeal, although non-defendant Lieutenant Governor allegedly told Plaintiff to "work with mental health" because it was "all in [Plaintiff's] head." Dkt. 60 ¶ 11.

IDOC has no record of Plaintiff's July 2020 concern form, grievance form, or grievance appeal. Defendants accurately point out that Plaintiff's allegations about his July 2020 grievance are unsupported by any evidence other than Plaintiff's self-serving statements. *See F.T.C.*, 104 F.3d at 1171 (stating a party cannot create a genuine dispute of material fact by submitting a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence"). Therefore, the Court need not credit Plaintiff's Declaration on this point.

Alternatively, even if the conclusory allegations in the Declaration are taken as true, Plaintiff still failed to exhaust administrative remedies with respect to his sexual abuse claims.

> a)    *Plaintiff Has Not Met His Burden of Showing that His July 2020 Grievance Forms Identified Gonzalez*

Assuming Plaintiff did utilize the grievance process in July 2020, the Court notes that the only evidence of the content of those grievance forms is found in three statements in Plaintiff's Declaration.

First, Plaintiff describes the July 2020 concern form as complaining of "mistreatment by prison staff in the form of inappropriate touching." Dkt. 60 ¶ 10. Plaintiff does not allege that the concern form identified Gonzalez as the staff member engaged in the sexual misconduct.

Second, Plaintiff states that his July 2020 grievance, which he filed after he did not receive a response to his concern form, "describ[ed] his sexual abuse." *Id*. ¶ 11. Plaintiff does not allege that the grievance form identified Gonzalez.

Third, in his July 2020 grievance appeal, Plaintiff appealed the fact that "no action had been taken on my sexual abuse grievance." *Id*. Once again, Plaintiff does not assert that the grievance appeal identified Gonzalez.

Given that proper exhaustion requires an inmate to identify the particular individuals against whom the inmate is asserting the grievance, *Waldram Decl*. ¶ 7, Plaintiff's failure to establish that he identified Gonzalez in the July 2020 grievance forms leads necessarily to the conclusion that Plaintiff did not properly exhaust any sexual abuse claims against Gonzalez in his alleged use of the grievance system during July of 2020.

> b)    *The July 2020 Grievance Forms Could Not Have Exhausted Later Claims*

In addition to not identifying Gonzalez in the July 2020 grievance forms, Plaintiff has also failed to raise a genuine dispute that the July 2020 grievance forms exhausted any claims that arose later. A grievance cannot serve to exhaust claims that arose after the grievance was filed. Thus, any sexual abuse claims arising after July 2020 were not properly exhausted on this basis as well.

> c)    *Plaintiff's Sexual Abuse Claims Arising in July 2020 or Before Appear Barred by the Statute of Limitations*

Finally, even if Plaintiff had properly exhausted some sexual abuse claims against Gonzalez in the July 2020 grievance forms—which he did not—it appears that the claims against Gonzalez arising in July 2020 or before are subject to dismissal as untimely.

In Idaho, the statute of limitations period for filing a § 1983 claim is two years. *See* Idaho Code § 5-219; *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985) (holding that the statute of limitations period for § 1983 claims is the statute of limitations period for personal injuries in the state where the claim arose), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Though state law governs the limitations period for filing a § 1983 claim, federal law governs when that claim accrues or arises. *Elliott v. City of Union City*, 25 F.3d 800,

MEMORANDUM DECISION AND ORDER - 20

801–02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*. at 1049.

If a plaintiff cannot show that his claim accrued during the statute of limitations period, he still may file a lawsuit beyond the limitations deadline if he can show that the statute should have been tolled (or paused) for a certain period of time during the period within which he should have filed the lawsuit. Under the PLRA, the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown*, 422 F.3d at 943.

In addition to tolling under the PLRA, state tolling law applies to a § 1983 action unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975). Idaho law allows for statutory tolling of the statute of limitations for a person's juvenile status or insanity. Idaho Code § 5-230. However, because the Idaho Supreme Court has determined that "statutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

The doctrine of equitable *estoppel*, however, is available in Idaho. While it "does not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co. v. Chemetics Int'l, Inc*., 887 P.2d 1039, 1042

(Idaho 1994), *abrogated in part on other grounds by Day as Tr. of Tr. B of Donald M. Day & Marjorie D. Day Fam. Tr. v. Transp. Dep't*, 166 Idaho 293, 301, 458 P.3d 162, 170 (Idaho 2020).

Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) the party asserting estoppel did not know or could not discover the truth; (3) the false representation or concealment was made with the intent that it be relied upon; and (4) the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id*. at 1041.

The two-year statute of limitations means that any sexual abuse claims against Gonzalez that could possibly have been exhausted through Plaintiff's July 2020 use of the grievance process had to be filed no later than July 2022. However, Plaintiff filed the initial complaint in this case, at the earliest, on September 8, 2023.[3] Thus, it appears that any sexual abuse claims that might have been exhausted in Plaintiff's July 2020 grievance are untimely.

Because neither party raised a timeliness issue in their summary judgment briefing, the Court notifies the parties that it intends to dismiss Plaintiff's sexual abuse claims arising in or before July 2020 on the additional basis that they are untimely. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party . . . ."). The parties will be permitted an opportunity to file supplemental briefing on the timeliness issue.

---

[3]     Prisoners are usually entitled to the benefit of the "mailbox rule," which provides that a legal document is deemed filed on the date the prisoner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights actions).

ii.    <u>Plaintiff's February, April, May, and June 2023 Grievances Were Untimely and Did Not Contain the Specific Information Required by the IDOC Grievance Process. Therefore, These Grievances Did Not Exhaust Available Remedies for Plaintiff's Sexual Assault Claims</u>

The IDOC's grievance system records, as well as records submitted by Plaintiff, reveal that Plaintiff submitted four grievances about sexual assault in February, April, May, and June 2023. However, these grievances were all untimely and, therefore, did not exhaust available remedies. In addition, the grievances did not contain specific information, such as dates, names, and places, as required by IDOC procedures.

In February 2023, Plaintiff submitted Grievance No. ISCI-23-REG-00163 ("Grievance 163"). In Grievance No. 163, Plaintiff complained about being a victim of sexual abuse, as well as several other issues. *Martinez Quinoz Decl*., Ex. D, Dkt. 47-6 at ECF p.53. Grievance 163 was returned without action because, among other problems, it did not contain specific information such as dates, places, and names. *Id*.

In April 2023, Plaintiff filed Grievance No. ISCI-23-00432 ("Grievance 432"). Grievance 432 stated that Plaintiff had been "victimized" through "sexual contact" and that prison staff "failed to report felony charges to law enforcement." *Escobedo Decl*., Ex. 4, Dkt. 60-1 at ECF p.11. Grievance 432 did not identify Defendant Gonzalez as the person who assaulted Plaintiff but stated only that Gonzalez and deputy wardens Davis, Ross, and Tyvand should "all be held accountable to the fullest extent of the law." *Id*. This grievance was returned without action because the grievance contained no specific date of the sexual contact and because the underlying concern form was addressed to three different staff members instead of just one, as required by IDOC procedures. *Martinez Quinoz Decl*., Ex. C, Dkt. 47-6 at ECF p. 51.

In May 2023, Plaintiff submitted another grievance: Grievance No. ISCI-23-00543 ("Grievance 543"). Grievance 543 complained that Plaintiff had been sexually assaulted by

Defendant Gonzalez and that staff members failed to report the issue to law enforcement. *Escobedo Decl.*, Ex. 4, Dkt. 60-1 at ECF p.12. Grievance 543 was the first grievance in which Plaintiff identified Defendant Gonzalez as the perpetrator. This grievance was returned without action because it did not contain a specific date as required by the IDOC grievance procedure. *Martinez Quinoz Decl.*, Ex. E, Dkt. 47-6 at ECF p.55.

In June 2023, Plaintiff submitted Grievance No. ISCI-23-REG-00587 ("Grievance 587"). In Grievance 587, Plaintiff complained that "staff failed to report a PREA claim to law enforcement." *Id.*, Ex. F, Dkt. 47-6 at ECF p.57. Grievance 587 was returned without action because, among other things, Plaintiff's PREA complaint *was* reported to law enforcement and, as a result, the issue was now outside the control of the IDOC and in the hands of law enforcement. *Id.*

As set forth above in the Court's recitation of Plaintiff's factual allegations, the date of the last incident of sexual abuse by Defendant Gonzalez is unclear from the record. If the allegations in the Complaint are taken as true, the last incident occurred on or before December 31, 2022. TAC ¶ IX (stating that Gonzalez's abuse "continued . . . from about January 2020 through December 2022"). However, in Plaintiff's Declaration, he states that Gonzalez was not working at the prison—and thus, obviously, could not have sexually assaulted Plaintiff—from "late 2021 through most of 2022," and Petitioner does not state that Gonzalez committed any additional sexual assaults against him after she returned to work in late 2022. *Escobedo Decl.*, ¶ 14. For purposes of considering Defendants' Motion for Summary Judgment, however, the Court will assume that December 31, 2022, was the last date on which Gonzalez sexually assaulted Plaintiff.

The IDOC's grievance process provides that a grievance must be filed within 30 days of the incident of which the inmate complains. *Waldram Decl*. ¶ 6 and Ex. B at 8, Dkt. 47-4 at ECF

p.12. Thus, the very latest Plaintiff could have submitted a timely grievance about Gonzalez's sexual assaults was January 30, 2023 (thirty days after December 31, 2022). Plaintiff's February, April, May, and June 2023 grievances were untimely and, as such, did not serve to properly exhaust administrative remedies. Further, they were all returned without action for other failures to comply with required grievance procedures, such as failure to include specific information such as dates, places, and names.

That Plaintiff told several clinicians about the sexual assaults also did not constitute proper exhaustion. Exhausting the IDOC's grievance process requires (1) a concern form, (2) a grievance form, and (3) a grievance appeal, and proper exhaustion required Plaintiff to comply with the prison's grievance procedures—including deadlines. The law is clear that "the prison's requirements . . . define the boundaries of proper exhaustion," *Jones*, 549 U.S. at 218, and verbally reporting Gonzalez's abuse does not comply with the prison's grievance procedures.

Plaintiff also claims he feared retaliation if he were to report Gonzalez's misconduct. However, the only specific information about this alleged fear of reprisal is that, in July 2020, either non-defendant Lieutenant Governor or another unidentified staff member told Plaintiff he was filing too many grievances and that he could be transferred if he kept doing it. This allegation is far too vague to raise a genuine dispute that prison officials may have thwarted Plaintiff "from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Further, there is no evidence that this vague warning in July 2020 would have inhibited Plaintiff from filing a timely grievance years later in January 2023.

Because Plaintiff's February, April, May, and June 2023 grievances were untimely and did not contain the specific information required by IDOC's grievance procedures, these grievances did not properly exhaust administrative remedies as to Plaintiff's sexual abuse claims.

iii.        Plaintiff's PREA Complaint Did Not Constitute Proper Exhaustion

Plaintiff submitted his PREA complaint on January 3, 2023, within thirty days of December 31, 2025 (the date upon which the very last sexual assault could possibly have occurred). However, the PREA report is not a concern form, grievance form, or grievance appeal and, as such, did not exhaust available administrative remedies.

The IDOC grievance procedures specifically list "[a]ny issue related to PREA" as an issue that should be raised through the grievance process. *Waldram Decl.*, Ex. B at 6, Dkt. 47-4 at ECF p.10. In addition, "many courts have held that the PREA's reporting requirements do not supersede the PLRA's exhaustion requirements." *Farmer v. Otter*, No. 1:14-CV-00345-BLW, 2015 WL 5595497, at *5 (D. Idaho Sept. 22, 2015) (unpublished); *see also Hunter v. Thompson*, 631 F. App'x 488 (9th Cir. 2016) (unpublished) ("[A]lthough Hunter made complaints of harassment through Prison Rape Elimination Act procedures, Hunter did not properly exhaust through the Offender Grievance Program, and did not show that administrative remedies were effectively unavailable to him.").

Accordingly, Plaintiff's PREA report did not serve to properly exhaust Plaintiff's sexual abuse claims against Defendant Gonzalez.

### B.        *Plaintiff Did Not Properly Exhaust His First Amendment Retaliation Claims against Defendants Hansen, Doe, Barrows, Bell or Rodgers Because Plaintiff's Grievances Did Not Identify These Defendants*

As set forth above, Plaintiff exhausted three grievances that appear related to some of Plaintiff's claims. Grievance 556 complained of Defendant Corporal Noble's confiscation and destruction of Plaintiff's property. This grievance did not include any allegations against any other Defendant. *Waldram Decl.*, Ex. E, Dkt. 47-4 at ECF pp. 73–76.

Grievance 126 alleged that Plaintiff was placed in handcuffs that were too tight. This grievance did not identify the "John Doe" individual who placed Plaintiff in the handcuffs.

MEMORANDUM DECISION AND ORDER - 26

*Martinez Quinoz Decl.*, Ex. K, Dkt. 47-6 at ECF p. 72 ("I was injured by staff's incorrect use of handcuffs and force. I was bleeding, I wanted it documented and pictures taken for records dose [sic] not show the enjury [sic] and hold accountability.").

Finally, Grievance 1118 states that a "staff" member forced Plaintiff to "go an entire night without a mattress." *Id.*, Ex. L, Dkt. 47-6 at ECF pp. 78–79. Plaintiff stated that he tried to resolve the problem informally by speaking with a number of non-defendants, as well as Defendant Corporal Smith. *Id.* The grievance response reveals that non-defendant Jacob Rogers may have mistakenly failed to provide Plaintiff with an adequate mattress and that Rogers apologized for this mistake.

None of these properly exhausted grievances identified Defendants Hansen, Doe, Barrows, Bell or Rodgers. Therefore, Defendants have met their initial burden of showing that Plaintiff did not properly exhaust his claims against these Defendants.

Plaintiff has offered no rebuttal to Defendants' evidence on this issue. Instead, Plaintiff merely contends, in conclusory statements in his opposition brief, that Plaintiff "properly followed grievance procedures" or "properly grieved" these issues. Dkt. 58 at 5. This is woefully insufficient to raise a genuine dispute of fact. Therefore, all claims against Defendants Hansen, Doe, Barrows, Bell or Rodgers must be dismissed for failure to exhaust available administrative remedies.

### C. *Plaintiff Did Not Properly Exhaust His Mattress Retaliation Claim against Defendant Smith, or His Property Deprivation Retaliation Claim against Defendant Noble, Because, Although Plaintiff's Grievances Identified These Defendants, They Did Not Complain of Retaliation*

Grievance 556 identified Defendant Noble and complained that Noble confiscated and destroyed Plaintiff's property. And Grievance 1118 complained that Plaintiff was denied an adequate mattress and that he attempted to solve the issue by speaking with Defendant Smith. However, neither grievance alleged that Noble or Smith took any action *in retaliation* for

Plaintiff's exercise of constitutional rights. IDOC's procedures require that an inmate raise one specific issue per grievance. If Plaintiff wanted to complain about retaliation, he could have done so. He did not. Accordingly, these claims must also be dismissed for failure to exhaust available administrative remedies.

### REVIEW UNDER §§ 1915 AND 1915A

Alternatively, in addition to Plaintiff's failure to exhaust, the Court must dismiss Plaintiff's mattress retaliation claim against Smith and his property-deprivation retaliation claim against Noble because the Third Amended Complaint fails to state a plausible retaliation claim against these Defendants on these issues.

A district court must dismiss a prisoner or pauper complaint—or any portion thereof—at any time if the complaint fails to state a claim upon which relief may be granted, if defendants are immune from the type of relief the plaintiff seeks, or if a claim is frivolous or malicious. *See* 28 U.S.C. §§ 1915(e) and 1915A(b). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

MEMORANDUM DECISION AND ORDER - 28

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Moreover, even if a complaint meets the pleading requirements, dismissal under §§ 1915 and 1915A is still appropriate if an affirmative defense, such as untimeliness or the doctrine of *Heck v. Humphrey*, is an "obvious bar to securing relief on the face of the complaint." *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (internal quotation marks omitted).

A First Amendment retaliation claim must allege the following: "(1) . . . that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient.").

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks

omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent, such as that official's knowledge of the plaintiff's exercise of protected activity. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532,

and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

1.    **The Third Amended Complaint Does Not State a Plausible Retaliation Claim Against Corporal Smith for the Deprivation of the Mattress**

The only allegations in the Third Amended Complaint are that a correctional officer deprived Plaintiff of a mattress for a night. The Third Amended Complaint contains no allegations plausibly suggesting that Defendant Smith took any action with respect to this mattress incident because of Plaintiff's reporting of Defendant Gonzalez's actions.

The Third Amended Complaint implies, at most, that Smith took some action against Plaintiff with respect to Plaintiff not receiving a mattress *after* Plaintiff may have said something to someone at the prison—not Smith—about being sexually assaulted. This is nothing but simple timing and, as such, is insufficient to state a plausible retaliation claim. *See id.* at 808. Accordingly, this claim must be dismissed.

2.    **The Third Amended Complaint Does Not State a Plausible Retaliation Claim Against Corporal Noble for Confiscation and Destruction of Plaintiff's Property**

Plaintiff's retaliation claim against Defendant Noble for deprivation of property faces the same challenge as his claim against Smith. The complaint alleges only that Noble told Plaintiff he had exceeded his allowable property limits, and that Noble confiscated and destroyed some of that property *after* Plaintiff informed someone at the prison—not Noble—that he was being sexually assaulted. Once again, this mere fact of timing does not state a claim upon which relief may be granted, and Plaintiff's retaliation claim against Noble must be dismissed on this basis as well. *See id.*

**CONCLUSION**

For the foregoing reasons, Plaintiff's claim of parole denial is barred by *Heck v. Humphrey*, and his remaining claims are subject to dismissal because Plaintiff failed to exhaust available

administrative remedies. In addition, any sexual abuse claims arising in July 2020 or before appear to be time-barred. Finally, the Third Amended Complaint fails to state plausible retaliation claims against Defendants Smith and Noble.

**ORDER**

**IT IS ORDERED:**

1.    Defendants' Motion for Judgment on the Pleadings (Dkt. 46) is GRANTED IN PART, as to Plaintiff's claim of retaliatory denial of parole, and this claim is dismissed without prejudice.

2.    Defendants' Motion for Summary Judgment (Dkt. 47) is CONDITIONALLY GRANTED. Within 21 days after entry of this Order, Plaintiff may file a response addressing the Court's timeliness analysis. Defendants may file a reply within 14 days after service of Plaintiff's response.

3.    The supplemental briefing filed by the parties may address only the timeliness issue identified by the Court and may not be used to present argument or evidence regarding exhaustion issues that was not submitted during principal briefing on the Motion for Summary Judgment.



DATED: September 24, 2025

Amanda K. Brailsford
U.S. District Court Judge